John L. Norman, SBN: 52667
Law Offices of John L. Norman
A Professional Law Corporation
1428 North Broadway
Santa Ana, CA 92706
Telephone: (714) 547-5552
Facsimile: (714) 547-4283

Attorney for Plaintiffs
FRANK AGUILAR AND HELEN AGUILAR

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRANK AGUILAR**, an individual, and **HELEN AGUILAR**, an individual,<br><br>Plaintiff(s),<br><br>vs.<br><br>**OCWEN LOAN SERVICING, LLC**, a Delaware corporation; **FEDERAL HOME LOAN MORTGAGE CORPORATION**, dba **FREDDIE MAC**, a Business Entity the Form of Which is Unknown; and DOES 1 to 100, Inclusive,<br><br>Defendant(s). | Case No.: SACV13-01717-CJC-E<br><br>**NOTICE OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DATE: February 10, 2014**<br>**TIME: 1:30 PM**<br>**CTRM: 9B**<br><br>**Complaint Filed: Feb. 13, 2013**<br>**Trial Date Not Yet Assigned** |

TO THE COURT, THE PARTIES AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs **FRANK AGUILAR**, an individual, and **HELEN AGUILAR**, an individual, will hereby and do by and through their Attorney of Record, submit the following opposition to Defendant's

(**OCWEN LOAN SERVICING, LLC**, a Delaware corporation; **FEDERAL HOME LOAN MORTGAGE CORPORATION**, dba **FREDDIE MAC**, a Business Entity the Form of Which is Unknown) motion to dismiss Second Amended Complaint ("SAC").

Local Rule 7-9 requires a formal response to be filed and served no later than 21 days before the hearing on this Motion. Reply papers shall be filed and served no less than 7 days prior to the hearing on this Motion.

This opposition is based upon this Notice, the attached Memorandum of Points and Authorities, and upon all papers and documents on file herein, the Court's files concerning this action, together with those facts and documents of which the parties request judicial notice and/or matters which judicial notice is proper, as well as any oral argument that may be presented at the time of the hearing.

DATED: January 20, 2014                    Respectfully Submitted,


                                           LAW OFFICES OF
                                           JOHN L. NORMAN
                                           Attorney for Plaintiffs
                                           Frank Aguilar and Helen Aguilar


//
//
//
//
//
//
//

1

## **TABLE OF CONTENTS**

2

3   **I.     INTRODUCTION** ................................................................. 1

4   **II.    STATEMENT OF FACTS** .................................................. 1

5

6   **III.   PROCEDURAL HISTORY** ................................................ 1

7   **IV.    MOTION TO DISMISS** ...................................................... 3

8
        **A. LEGAL STANDARD** ................................................... 3
9

10      **B. WRITTEN INSTRUMENTS WERE ATTACHED AS
            EXHIBITS TO PLAINTIFFS' PLEADINGS  AS TO**
11      **THE EXISTENCE OF DOCUMENTS, BUT NOT AS**
12      **TO THEIR CONTENTS** ........................................... 4

13      **C. ALTERNATIVELY, SHOULD THE COURT BE**
14          **INCLINED TO DISMISS, PLAINTIFFS SHOULD BE**
15          **GRANTED LEAVE TO AMEND COMPLAINT** ................. 5

16  **V.     LEGAL ARGUMENTS** ....................................................... 6

17      **A. PLAINTIFFS HAVE PROPERLY ALLEGED A CAUSE**
18          **OF ACTION FOR WRONGFUL FORECLOSURE** ............ 6

19
            i.   **Western Progressive DID NOT have Authority**
20               **to Issue and Cause to be Recorded the NOD** ............... 6

21          ii.  **Western Progressive was NOT Acting as the**
22               **Agent of the Legal and Rightful Beneficiary**
                 **at the Time of the Recorded NOD** ................................. 9
23
            iii. **Defendants' Erroneously Rely on**
24               ***Gomes v. Countrywide Home Loans* to**
                 **Support its Contentions** ...................................... 10
25
            iv.  **Plaintiffs were prejudiced by the irregularities**
26               **of the Foreclosure Sale**........................................... 10

27          v.   **Plaintiffs Cured the Default by Paying the**
                 **Necessary Funds to Reinstate the Loan Secured**
28               **by the 1996 DOT, Thus Beneficiary had NO**
                 **Authority to Proceed with Sale**....................................... 11

vi.  **Tender Rule** ............................................................ **12**

**B. PLAINTIFFS HAVE PROPERLY ALLEGED A CAUSE OF ACTION FOR PROMISSORY ESTOPPEL**.................... **15**

i.  **The Plaintiffs Have Alleged a Clear and Unambiguous Promise by the Defendants, which Defendants Broke**................................ **15**

ii.  **The Plaintiffs Detrimentally Relied on the Defendants' Promises** ........................................ **16**

**C. PLAINTIFFS HAVE PROPERLY ALLEGED A CAUSE OF ACTION FOR FRAUD UNDER SECTION 1572** ........... **19**

**D. PLAINTIFFS HAVE PROPERLY ALLEGED A CAUSE OF ACTION FOR VIOLATION BUSINESS AND PROFESSIONS CODE SECTION 17200** .............................. **20**

**E. PLAINTIFFS HAVE PROPERLY ALLEGED A CAUSE OF ACTION FOR QUIET TITLE** ............................. **21**

**VI.  CONCLUSION** ................................................... **22**

1

# <u>TABLE OF AUTHORITIES</u>

2

**<u>Federal Cases</u>**

*Ashcroft v. Iqbal*, 556 U.S. 664, 129 S. Ct. 1937,

   173 L. Ed. 2d 868 (2009) .................................................................. 3, 4

*Balistreri v. Pacifica Police Dept.,* 901 F.2d 696 (9th Cir. 1988).......................... 4

*Bank of Fairbanks v. Kaye*, 227 F.2d 566 (9th Cir. 1995)................................ 18

*Castillo v. Skoba*, 2010 WL 3986953; (2010) U.S. Dist. LEXIS 108432 .......... 11

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)....................................... 3

*Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246 (9th Cir. 1997) .............................. 3

*In re Cruz*, (S.D. Cal 2011) 457 B.R. 806, 2011 WL 3583115 ............................ 7

*In re Salazar*, 448 B.R. 814 (S.D. Cal. 2011)....................................... 13

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)....................................... 5

*Parks Sch. of Bus. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ........................... 3

*Sacchi v. Mortgage Electronic Registration Systems*, 2011 U.S. Dist. LEXIS

   68007, 2011 WL 2533029 (C.D. Cal. June 24, 2011)............................... 7, 8, 13

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .................................................. 1

*Vissuet v. Indymac Mortg. Services*, No. 09-CV-2321-IEG, 2010 U.S. Dist. LEXIS

   26241, 2010 WL 1031013 .................................................. 13, 14


**<u>State Cases</u>**

*Bacon v. Wahrhaftig*, 97 Cal. App.2d 599 *(1950)* ................................................. 20

*Bank of America v. La Jolla Group II*, 129 Cal.App.4th 706 (2005) ............. 11,12

*Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992) ............................... 21

*Bisno v. Sax*, 175 Cal.App.2d 713 (1959) ....................................... 11, 12

*Dimock v. Emerald Properties, LLC*. 81 Cal. App. 4th 868,

   97 Cal. Rptr.2d 255 (2000)................................................. 14

*Garcia v. World Savings Bank*, FSB, 183 Cal.App.4th 1031 (2010).................. 17

*Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App 4th 1449,

    121 Cal. Rptr. 3d 819 (2011) ............................................................... 10

*Lazar v. Superior Court,* 12 Cal.App.4th 631 (1996)........................................... 19

*Marby v. Superior Court*, 185 Cal. App. 4th 208,

    110 Cal. Rptr. 3d 201 (2010)........................................................... 11, 14

*Motors, Inc. v. Times-Mirror Co.*, 102 Cal. App. 3d 735 (1980) ....................... 21

*People v. Casa Blanca Convalescent Homes, Inc.*,

    159 Cal. App. 3d 509 (1984) ....................................................... 21

*Poseidon Development*, 152 Cal. App. 4th 1006 (2007) ....................................... 5

*Onofrio v. Rice*, 55 Cal.App 4th 413, 64 Cal. Rptr. 2d 74 (1997) ...................... 13

*Robinson v. Countrywide Home Loans, Inc.*, 199 Cal.App.4th 42 (2011) ........... 8

*Sauders v. Superior Court*, 27 Cal. App. 4th 832 (1994) ................................... 20

*State Farm Fire & Casualty Co. v. Superior Court*,

    45 Cal. App. 4th 1093(1996) ....................................................... 21

*Sutherland v. Barclays American Mortgage Corp.*,

    53 Cal.App.4th 299 (1997) ................................................... 17, 18, 19

*Ung v. Koehler*, Cal.App.4th 186 (2005) ...................................................... 10

*Vineland Homes, Inc. v. Barish*, 138 Cal.App.2d 747 (1956) ........................... 18

*Wilson v. Bailey*, 8 Cal.2d 416 (1937) .................................................... 15, 17

*Youngman v. Nevada Irrigation Dist*, 70 Cal.2d.240 (1969) ........................... 15

**Federal Statutes**

Fedederal Rule of Civil Procedure 10(c) ..................................................... 4

Federal Rule of Civil Procedure 12(b)(6) ..............................................3-5, 10

**State Statutes**

*California Civil Code § 2932.5*...........................................................6, 7, 13, 14

*California Civil Code § 2924*.................................................................. 10, 11

*California Civil Code § 2924(a)(1)* ...................................................6, 7, 10, 11

*California Civil Code § 2924(a)(2)* ..................................................... 8, 9, 12

*California Civil Code § 2924(a)(6)* .................................................... 7, 8, 12

*Business and Professions Code section 17200* ...................................... 20


## **Treatises**

*California Real Estate Law & Practice § 123.01* ................................... 11

*Miller & Starr California Real Estate, 3d § 10:212* ................................ 12, 13, 14

## I.

## <u>INTRODUCTION</u>

Defendants' Motion fails, not only because the Second Amended Complaint ("SAC") sets forth sufficient allegations, both legal and factual, to establish a statement of the claims for which relief can be granted, but also because Plaintiffs have sufficiently pleaded both plausible factual allegations, as well as legal claims, to enable their SAC to move forward.  This is not the phase in litigation to resolve the contest between the facts or the merits of the case.  In reviewing the sufficiency of the claims asserted, the issue is ***not*** whether Plaintiffs will ultimately prevail, but whether the Plaintiffs are entitled to offer evidence to support the claims asserted.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II.

## <u>STATEMENT OF FACTS</u>

The Plaintiffs' hereby incorporate by reference the statement of facts contained within the SAC.

## III.

## <u>PROCEDURAL HISTORY</u>

P Assets filed an Unlawful Detainer action against the Plaintiff on January 4, 2013. The Plaintiff filed a Demurrer to the P Asset's Complaint on January 14, 2013.  The Demurrer was originally scheduled for March 15, 2013, however, P Assets filed an ex parte motion to shorten time on January 28, 2013 and hearing was heard on February 15, 2013.

In the interim, the Plaintiffs filed a civil complaint on February 13, 2013 in the Orange County Superior Court (Case Number: 30-2013-00630316-CU-BC-CJC.  The Plaintiffs named: Bank of America, Ocwen, Freddie Mac, Western Progressive, and P Assets for Wrongful Foreclosure, Breach of Contract, Promissory Estoppel, Quiet Title and other causes of action.

The Plaintiff Demurrer in the Unlawful Detainer Action was overruled on February 15, 2013 and ordered to file an answer five (5) days after, on February

20, 2013.  Subsequently, P Assets filed a Request for Trial on February 21, 2013 and UD trial was set for March 7, 2013.

On March 6, 2013, the Plaintiff filed under the Civil Case (Case No.: 30-2013-00630316-CU-BC-CJC) a Notice of Related Case and Motion for Consolidation.  The hearing to consolidate was set for April 12, 2013. The Plaintiff filed under the Unlawful Detainer action an Ex Parte Motion to Stay the Trial pending the hearing on the Notice of Related Case and Motion for Consolidation filed in the Civil Case. The Plaintiff's motion was denied on March 7, 2013 and Trial commenced on March 8, 2013.  The trial lasted approximately two (2) hours. The trial court took the matter under submission and awarded possession to P ASSETS on March 12, 2013.

The Plaintiff filed a Notice of Appeal on March 14, 2013 and subsequently filed an Ex Parte Motion for Stay the Judgment while Pending Appeal on March 22, 2013. The hearing for the Ex Parte was set and heard on March 25, 2013.  The trial court took the matter under submission and denied the motion on March 27, 2013. A timely notice of appeal was filed in this case on April 14, 2013. The Appeal is currently ongoing.

Under the Civil Case (Case No.: 30-2013-00630316-CU-BC-CJC), all defendants demurred the complaint. The Plaintiffs filed their First Amended Complaint prior to the hearing.  On September 27, 2013, the Superior Court heard all parties' demurrers as to the First Amended Complaint. The Superior Court sustained Bank of America, Western Progressive and P Asset's demurrers as to the entire complaint.  As for Ocwen and Freddie Mac, the Superior Court overruled the demurrer with leave to amend causes of action for Wrongful Foreclosure and Quite Title, and overruled entirely Defendants' demurrer for Promissory Estoppel, Fraud/Deceit, and Violation of Business and Professions Code.

On October 31, 2013, Freddie Mac filed a Notice of Removal to this Court and subsequently filed a Motion to Dismiss under Rule 12(B)(6) for a second bite

of the apple. The Plaintiffs now file this Opposition to Ocwen Loan Servicing, LLC and Federal Home Loan Mortgage Corporation's Motion to Dismiss.

## MEMORANDUM OF POINTS AND AUTHORITIES

### IV.
### MOTION TO DISMISS

Motion to dismiss for failure to state a claim under the Federal Rules of Civil Procedure, Rule 12(b)(6) are viewed with disfavor, and accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997) (citation omitted).

### A.
### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. See *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

In considering such a motion, a court must take all allegations of material fact as true and construe them in the "light most favorable to the nonmoving party, although 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While a "complaint need not contain detailed factual allegations … it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id*.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 664, 129 S. Ct. 19437, 199, 173 L. Ed. 2d 868 (2009). "The plausibility standard is not akin to a 'probability

1    requirement,' but it ask for more than sheer possibility that a defendant acted
2    unlawfully." *Id.*

3        The Defendants Ocwen Servicing, LLC and Federal Home loan Mortgage
4    Corporation (collectively referred herein to as the "Defendants") allege that the
5    Plaintiffs's SAC fails to state a claim upon which relief may be granted.
6    However, as stated above, dismissal pursuant to Rule 12(b)(6) is only proper
7    where there is either a "lack of a cognizable legal theory" or "the absence of
8    sufficient facts alleged under a cognizable legal theory". *Balistreri v. Pacifica*
9    *Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1988).    Plaintiffs, therefore, ask the
10   Court to apply the correct standard and deny Defendants' Motion to Dismiss and
11   allow the proceedings to continue in the manner that is procedurally correct.

**B.**
**WRITTEN INSTRUMENTS WERE ATTACHED**
**AS EXHIBITS TO PLAINTIFFS' PLEADINGS**
**AS TO THE EXISTENCE OF DOCUMENTS,**
**BUT NOT AS TO THEIR CONTENTS**

16       Plaintiffs specifically disputes the contents of the documents contained in
17   the exhibits attached to Plaintiffs' SAC which Defendants rely upon in its Motion
18   to Dismiss.   In the instant case, Defendants state that "[a] copy of a written
19   instrument that is an exhibit to a pleading is part of a pleading for all purposes[]"
20   according to Fed. Rule Civ. Proc. 10(c).   Defendants attempt to turn this Motion
21   to Dismiss into a Motion for Summary Judgment by relying on several exhibits
22   attached to Plaintiffs' SAC to support factual contentions which they seek to inject
23   into the pleadings.

24       For instance, Defendants cite to SAC, Exhibit F of Plaintiffs' SAC to
25   support their position that Western Progressive was an "Authorized Agent" for the
26   beneficiary (Motion to Dismiss, p. 5; 18-20).   Plaintiffs not only specifically
27   dispute this proposition and the validity of these documents, but also this is the

precise type of hearsay that cannot be considered in the context of Defendants' Motion to Dismiss. *Poseidon Development*, 152 Cal. App. 4th 1006, 1007 (2007).

The mere fact that the Plaintiffs have attached exhibits to their complaint does not by function remove the hearsay characteristics of the documents.  Thus, for the Defendants to suggest otherwise is not only nonsensical, but disingenuous.

## C.
## ALTERNATIVELY, SHOULD THE COURT BE INCLINED TO DISMISS, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND COMPLAINT

A review of the facts in the Plaintiffs SAC, clearly demonstrates the facts alleged, which, if construed in the light most favorable to Plaintiffs, is sufficient to support their causes of action.  However, should the Court be inclined to dismiss any of Plaintiffs' claims for relief, it must then consider whether to grant leave to amend.  The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless it determines that the pleadings could not possibly be cured by the allegations of other facts.  *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (citation and quotation omitted).

Accordingly, if the Court is inclined to dismiss any of the Plaintiffs' claims, Plaintiffs respectfully request leave to amend their Complaint to cure any defective allegations so they can provide sufficient facts in support of their claims for relief.

///

///

///

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

5

# V.
# LEGAL ARGUMENTS

## A.
## PLAINTIFFS HAVE PROPERLY ALLEGED A
## CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

### i.
### Western Progressive DID NOT have Authority to
### Issue and Cause to be Recorded the NOD

The Defendants argue that even though Western Progressive was not the substituted trustee at the time the Notice of Default ("NOD") was recorded, such is "immaterial" and does not invalidate the NOD because Western Progressive sent and recorded the NOD as the "authorized agent for the beneficiary in compliance with Civil Code §§2924(a)(1)." Motion to Dismiss, p. 5:13-15.

As noted above, Defendants rely on the NOD (SAC, Exhibit F) attached to Plaintiffs' SAC and improperly assert the contents contained within for the truth of the matter. Plaintiffs dispute the contents contained within the NOD as the identity of the beneficiary is unclear.

Plaintiffs have alleged that Western Progressive, the entity that recorded the NOD on August 13, 2012, acted before it had legal authority to do so pursuant to assignment of deed of trust and substitution of trustee which was subsequently recorded. (*See* SAC, Exhibits B – F: 1996 Deed of Trust (1996 DOT); Corporation Assignment of Deed of Trust (CADOT); Substitution of Trustee (SOT); Assignment of Deed of Trust (ADOT); and Notice of Default (NOD)).

The relevant portions of *Civil Code of Procedure § 2932.5* provides as follows:

> Where a power to sell real property is given to a mortgagee, or other encumbrance, in an instrument intended to secure payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. ***The power of sale may be exercised by the assignee if the assignment is acknowledged and recorded.***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs further contend that only an authorized entity may initiate foreclosure.  *See Civil § 2924(a)(1)*(that the NOD be issued by the "**trustee, mortgagee, or beneficiary, or any of their authorized agents**.") (emphasis added).

Additionally, *Civil Code § 2924(a)(6)* specifically states that:

> **NO** entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process **UNLESS it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed, or the designated agent of the holder of the beneficial interest** (emphasis added).  NO agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record notice of default of otherwise commence the foreclosure process **except** when acting within the scope of authority **designated by the holder of the beneficial interest**.

In a more recent case, the Bankruptcy Court in *In re Cruz* (S.D. Cal 2011) 457 B.R. 806, 2011 WL 3583115, held that *§ 2932.5* requires an assignee trust deed beneficiary to record its interest ***before*** it non-judicially forecloses.  *Id*. at 806.  Accordingly, the fact that the beneficiary of record was **not** the foreclosing beneficiary gives "rise to suspicion that the sale was **not authorized**, which is "the very risk that *§ 2932.5* was intended to safeguard." *Id*.

For example, the in *Sacchi v. Mortgage Electronic Registration Systems* (C.D. Cal. June 24, 2011) 2011 U.S. Dist. LEXIS 68007, 2011 WL 2533029, the Plaintiff claimed wrongful foreclosure against an entity that had no beneficial interest in the deed of trust when it acted to foreclose on Plaintiffs' home.  The court expressed incredulity when confronted with counsel's argument—similar to those made by Defendants here—that "someone…can seek and obtain foreclosure regardless whether he has established the authority to do so." *Id*.  The court asked, Defendants if their argument that "the recording and execution date is inconsequential and in no way connotes that the [Deed of Trust's] beneficial interest was transferred at that precise time" was accepted, "how is one to

determine whether (and when) the purported assignment was consummated?  How could one ever confirm whether the entity seeking to throw a homeowner out of his residence had the **legal authority** to do so?"  *Id*.  Hence, the court held the failure to record an assignment of the deed of trust opens the door for the Plaintiffs to assert that there is no valid assignment held by the foreclosing party.  *Id*.

Like in *Sacchi*, here in the instant case, the assignment to Ocwen of the 1996 DOT and the SOT of Western Progressive, took place **after** the NOD was issued and recorded, thus Plaintiffs contend that the foreclosing parties had no actual authority to foreclose.  *See Robinson v. Countrywide Home Loans, Inc.* 199 Cal.App.4th 42, 46 (2011)(the court held that while a borrower may not preemptively challenge the standing of a foreclosing entity, "a borrower who believes that the foreclosing entity lacks standing to do so … can seek to enjoin the trustee's sale or to set the sale aside."

The NOD by Western Progressive recorded on August 13, 2012 had no legal effect because at the time of the recording Bank of America was the Beneficiary of the 1996 DOT, and not Ocwen as incorrectly indicated on notice.  At that time, Equitable Deed was the Trustee designated by Bank of America, the holder of the beneficial interest, with the **designated** authority to cause a notice of default to be recorded and **designated** authority with the power of sale.   The assignment of interests under the 1996 DOT was not recorded until October 11, 2012; and it was not until November 28, 2012, when Ocwen finally substituted Western Progressive as the Trustee, replacing the "original Trustee" Equitable Deed under the 1996 DOT.

In accordance with *Civil Code §§ 2924(a)(2)* and *2924(a)(6)*, Western Progressive should not have caused to be recorded the NOD against the Plaintiffs, at least not until after November 28, 2012, when it became the designated Trustee of the new beneficiary Ocwen.  Plaintiffs were not afforded the statutory three month period between the NOD and NOTS in order to cure the default as required

by *Civil Code § 2924(a)(2)* and, therefore, the Court should deny Defendants' motion to dismiss as Plaintiffs have sufficiently alleged a claim for wrongful foreclosure.

**ii.**
**Western Progressive was NOT Acting as the Agent of the**
**Legal and Rightful Beneficiary at the Time of the Recorded NOD**

In its motion to dismiss, Defendants argue that Plaintiffs "confuse Western Progressive's role at different times in the events in question." Motion to Dismiss, p. 5:10. According to Defendants, Western Progressive issued the Notice of Default in its capacity as "agent for the beneficiary," rather than as the Trustee. Defendants do not proffer an explanation or indicate the identity of the "beneficiary," in which Western Progressive was acting as an agent for. Defendants ignores the fact that Ocwen appears to be listed as the beneficiary on the NOD, despite the fact that Ocwen did not yet have any interest in the 1996 DOT at the time NOD was recorded. Bank of America was the legal and rightful beneficiary, at the time the NOD was recorded. (*See* SAC, Exhibits B – F: 1996 DOT; CADOT; SOT; ADOT; and NOD).

The NOD unequivocally instructs Plaintiffs to contact Ocwen to arrange for payment to stop foreclosure, providing a number to "Beneficiary Phone: 877-596-8580," which directs the caller to Ocwen. (*See* SAC, Exhibit F – NOD). Assuming Western Progressive was acting as an agent, it was undoubtedly acting on behalf Ocwen, who had **NO** legal rights as the beneficiary at time notice was recorded. Thus, the Court should deny Defendants' Motion to Dismiss because Plaintiffs has sufficiently stated a claim to support wrongful foreclosure by the Defendants.

The NOD instructed the Plaintiffs to contact Ocwen to arrange for payment, despite the fact Ocwen had no right to such payment. Thus, assuming that Western Progressive is acting as an agent, it is unclear on behalf of which entity it is acting for and whether that entity had any interest in the property. Plaintiffs'

1  claim that the wrong party initiated foreclosure, and that Ocwen wrongfully
2  asserted an interest in the property is a factual inquiry not suited for a 12(b)(6)
3  motion.

### iii.
### Defendants' Erroneously Rely on *Gomes v. Countrywide Home Loans* To Support its Contentions

6          Defendants cite in support of their position *Gomes v. Countrywide Home*
7  *Loans, Inc.*, 192 Cal. App 4th 1449, 121 Cal. Rptr. 3d 819 (2011).  *Gomes* held
8  that *California Civil Code § 2924(a)(1)* does not "provide for a judicial action to
9  determine whether the person initiating the foreclosure process is indeed
10 authorized." *Id.* at 1155.  **BUT** the issue in *Gomes* was **NOT** whether the wrong
11 entity had initiated foreclosure; rather, the issue was whether the company selling
12 the property in the nonjudicial foreclosure sale was **authorized** to do so by the
13 owner of the promissory note. *Id.*  Notably, *Gomes* court distinguished a case in
14 which "the plaintiff alleged wrongful foreclosure on the ground that the
15 assignments of the deed of trust had been improperly backdated, and thus the
16 wrong party had initiated the foreclosure process." *Id.*  Thus, the plaintiffs in
17 *Gomes* pled a "complaint [which] identified a *specific factual basis* for alleging
18 that the foreclosure was not initiated by the correct party." *Id.* at 1156.  *Gomes*
19 therefore is inapposite to the case before us.

### iv.

### Plaintiffs were prejudiced by the irregularities of the Foreclosure Sale

22         Though Defendants challenge the notion that procedural defects are
23 unlikely to derail a foreclosure, California law requires ***strict compliance*** of non-
24 judicial foreclosure statues.  *Ung v. Koehler*, Cal.App.4[th] 186, 202-203 (2005).
25 "The statutory requirements must be strictly complied with, and the trustee's sale
26 based on statutorily deficient notice of default is **invalid.**" (Emphasis added) *Id.*
27 California courts have acknowledged that notices of default serve a vital purpose
28 as the "crucial first step in the foreclosure process." *Marby v. Superior Court*

Cal.App.4[th] 208, 221 (2010).  The U.S. District Court in *Castillo v. Skoba*, U.S. Dist. LEXIS 108432, 2010 WL 3986953 (2010) , held that "assuming prejudice is required, the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner because there is no power of sale without a valid notice of default.   Thus, "any foreclosure sale based on a void notice of default is also void and a party **may not** foreclose without the legal power to do so.  (Emphasis added) *Civil Code § 2924; California Real Estate Law & Practice § 123.01*.

Therefore, since Western Progressive recorded a NOD before it had a legal right to do so, the NOD is consequently invalid.  Plaintiffs, thus, request that the Court find the Defendants failed to adhere to the strict compliance of non-judicial foreclosure statutes as required by law and set aside the foreclosure sale that took place on December 27, 2012.

**v.**

**Plaintiffs Cured the Default by Paying the Necessary Funds to Reinstate the Loan Secured by the 1996 DOT, Thus Beneficiary had NO Authority to Proceed with Sale**

As a general rule, if funds necessary to reinstate or pay off a defaulted loan secured by a DOT are received by lender prior to the foreclosure sale, the foreclosure sale is **invalid** and may be set aside, even if purchaser was an innocent third party.   (Emphasis added) *Bank of America v. La Jolla Group II*, 129 Cal.App.4[th] 706, 711-714 (2005)(borrower paid lender the sum necessary to reinstate loan four days prior to foreclosure sale; which was held to be invalid by the court).  The Court of Appeal held that the "tender and acceptance of a payment sufficient to cure a default on a loan secured by a deed of trust reinstated the loan and deprived the trustee the power to foreclose.  *Bisno v. Sax*, 175 Cal.App.2d 713 (1959).  The court further elaborated, that "generally, the acceptance of payment of a delinquent installment of principal or interest cures that particular default and precludes a foreclosure sale based upon such preexisting delinquency."  *Id. at 723*.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

11

1   The power of sale only exists if it is expressly granted by the trustor in the
2   security documents. *Bank of America*, 129 Cal.App.4th at 713 (citing 4 Miller &
3   Starr, Cal. Real Estate (3d ed. 2003).  "Statutory provisions regarding the exercise
4   of the power of sale provide substantive rights to the trustor and limit the power of
5   sale for the protection of the trustor." *Id*.

6   The court *Bank of America* held that a deed of trust allows the beneficiary
7   to exercise its power of sale only if an "event of default" occurs.  *Id*.  If, after, a
8   default, the trustor and beneficiary enter into an agreement to cure the default and
9   reinstate the loan, no contractual basis remains for exercising the power of sale.
10  *Id*.  Here, the Plaintiffs and Ocwen entered into an agreement to cure the default
11  in which Plaintiffs detrimentally relied on and performed on.  Therefore, in
12  accordance with the holding in *Bank of America*, the beneficiary had no right to
13  proceed with the foreclosure sale.

14  Furthermore, in accordance with *Civil Code §§ 2924(a)(2)* and *2924(a)(6)*,
15  Western Progressive should not have caused to be recorded the NOD against the
16  Plaintiffs, or at the very least not until after November 28, 2012, when it became
17  the designated Trustee of Ocwen, the new beneficiary.  Plaintiffs were not
18  afforded the statutory three month period between the NOD and NOTS in order to
19  cure the default as required by *Civil Code § 2924(a)(2)*.  Accordingly,
20  Defendants' demurrer to Plaintiffs' cause of action for wrongful foreclosure
21  should be overruled in its entirety.

22
23  **vi.**
    **Tender Rule**

24  Defendants' lastly argue that Plaintiffs failed to state a claim as a matter of
25  law because Plaintiffs failed to allege tender of the alleged obligation.  Motion to
26  Dismiss, p. 7: 13-15.
27  As explained in the *Miller & Starr* legal treatise, "it is settled that an action
28  to set aside a trustee's sale for irregularities in a sale notice or procedure should be

1   accompanied by an offer to pay the full amount the debt for which the property
2   was security.  This rule is premised upon the equitable maxim that a court of
3   equity will not order that a useless act be performed."  *Miller & Starr California*
4   *Real Estate*, 3d § 10:212.

5        While the tender rule has application to the instant case in general terms,
6   the Court should note that despite Defendants' suggestions, **the tender rule is not**
7   **without exceptions**.  There is a general equitable exception that "tender may not
8   be required where it would be **inequitable** to do so."  *Onofrio v. Rice*, 55 Cal.App
9   4th 413, 424, 64 Cal. Rptr. 2d 74 (1997)(recognizing that there are "cases holding
10  that, where a party has the right to avoid a sale, he is not bound to tender any
11  payment in redemption"; adding that, "[w]hatever may be the correct rule,
12  viewing the question generally, it is certainly not the law that an offer to pay the
13  debt must be made, where it would be inequitable to exact such offer of the party
14  complaining of the sale");  *Milller & Starr California Real Estate*, 3d § 10:212.

15       Here in the case before us, the Plaintiffs have made a strong argument that
16  the tender—or at least full tender—should not be required because they are
17  contesting the validity of the sale in the first place.  *See In re Salazar*, 448 B.R.
18  814, 819 (S.D. Cal. 2011) ("If [party] was not authorized to foreclose the [Deed of
19  Trust] under *Civil Code section 2932.5*, the foreclosure sale may be void, and
20  [plaintiff] would not need to tender the full amount of the Loan to set aside the
21  sale"); *Sacchi*, 2011 U.S. Dist. LEXIS 68007 at 9-10 (declining to require tender
22  in wrongful foreclosure action because it "would permit entities to foreclosure
23  properties with impunity").  Plaintiffs have shown willingness to pay during the
24  pendency of this action or in the alternative agree to hold the proceeds from the
25  sale of the foreclosure in trust pending the outcome of this matter.

26       "[T]he California 'tender rule' applies where the plaintiff is trying to set
27  aside a foreclosure sale due to some irregularity."  *Vissuet v. Indymac Mortg.*
28  *Services*, No. 09-CV-2321-IEG, 2010 U.S. Dist. LEXIS 26241, 2010 WL

1031013.  As the court held in *Vissuet*, "where a party has the right to avoid a sale, he is not bound to tender any payment in redemption." *Id*. at 3.

Moreover, the California Court of Appeal noted in *Marby v. Superior Court*, that the tender rule was designed to apply to "a paradigm where, by definition*,* there is no way that a foreclosure sale [could] be avoided absent payment of all the indebtedness," thus rendering "[a]ny irregularities in the sale [] necessarily [] harmless to the borrower if there was no full tender." 185 Cal. App. 4th 208, 225, 110 Cal. Rptr. 3d 201 (2010).   As the *Marby* court noted, where statutes provide for certain requirements before foreclosure, a prerequisite of full tender before one can initiate an action challenging a foreclosing party's failure to satisfy those requirements would be nonsensical.  *Id*.  For example, the whole point of *Civil Code section 2923.5* is to create a new, even if limited right, to be contacted about the possibility of alternatives to full payment of arrearages.  It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender.

Lastly, where a sale is void, rather than simply voidable, tender is not required.  *Miller & Starr California Real Estate 3d § 10:212*.  The Court of Appeal held that where the incorrect trustee had foreclosed on a property and conveyed it to a third party, the conveyed deed was not merely voidable, but void. *Dimock v. Emerald Properties, LLC.* 81 Cal. App. 4th 868, 876, 97 Cal. Rptr.2d 255 (2000).

Plaintiffs' claims for wrongful foreclosure falls within the exception and qualifications against the blanket requirement of the tender rule and as such, the Court should decline to dismiss the SAC due to failure to allege tender.

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## B.
## PLAINTIFFS HAVE PROPERLY ALLEGED A
## CAUSE OF ACTION FOR PROMISSORY ESTOPPEL

Defendants' contend that Plaintiffs have not pled all the necessary elements of Promissory Estoppel.  The doctrine of promissory estoppel "make[s] a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.  *Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d.240, 249 (1969).   Under this doctrine "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement."  *Id.*   The cornerstone of this principle is that "he who by his language or conduct leads another to do what he would not otherwise have done **SHALL NOT** subject such person to loss or injury by disappointing the expectations upon which he acted."  (Emphasis added) *Wilson v. Bailey*, 8 Cal.2d 416, 423 (1937).

### i.
### The Plaintiffs Have Alleged a Clear and Unambiguous
### Promise by the Defendants, which Defendants Broke

The Defendants contend that the Plaintiffs by "claiming an oral promise by the Defendants to the Plaintiffs on an unknown date" have failed to allege a clear and unambiguous promise.   The Plaintiffs have alleged in their complaint "[s]uch promises included, among others that Plaintiffs' home would not be foreclosed and that Plaintiffs would no longer be in default on their mortgage and facing foreclosure if they made the requested payment of **$18,043.05**." (SAC, para. 52) The Defendants attempt to muddy the waters by arguing that the Plaintiffs admitted that $18,043.05 was not the amount that was necessary to cure the default and therefore did not pay the full amount required to cure the default. Motion to Dismiss, p. 8: 15-17.

---

1        Plaintiffs only learned that the $18,043.05 was not the "alleged" full
2    amount necessary to cure the default **AFTER** the wire transfer had been made on
3    December 26, 2012.   Plaintiffs were under the impression and belief that
4    $18,043.05 was the required amount needed.   The Plaintiffs' payment of the full
5    amount necessary was predicated on the notion that Defendants provided the
6    correct amount.   The conflicting amounts were due solely to Ocwen's
7    misrepresentations to the Plaintiffs.   This is not a situation where Plaintiffs
8    claimed they were aware that the reinstatement amount was $23,005.05, but yet
9    decided instead to only make a wire transfer for $18,043.05.   Plaintiffs
10   detrimentally made the decision that they were going to withdraw from their
11   pensions in order to save their home.   They would have surely made a wire
12   transfer for $23,005.05 had that been the amount provided to them by Ocwen.

13       Furthermore, at the time of filing the complaint, Plaintiffs did not know the
14   names of the Ocwen Representatives that made the promises to them, nor did the
15   Plaintiffs know the exact dates in which the promises were made.   However,
16   through discovery, the Plaintiffs have received the exact dates, times, and
17   representatives which made the promises.   Days leading up to the foreclosure sale,
18   Mrs. Aguilar spoke to two (2) Ocwen Representatives, Manjo L and Ayeshah
19   Mohammad.   Plaintiffs contend that both representatives provided wiring
20   instructions to Mrs. Aguilar, stating $18,043.05 was the amount necessary to
21   reinstate the loan.

22       Should the Court be inclined to dismiss Plaintiffs' claim for promissory
23   estoppel, Plaintiffs respectfully request that the Court grant leave to amend its
24   Promissory Estoppel claim in light of the fact Ocwen's communication logs were
25   received by Plaintiffs after the filing of the SAC.

26
27                                          **ii.**
     **The Plaintiffs Detrimentally Relied on the Defendants' Promises**
28       The Defendants contend that the Plaintiffs have failed to allege substantial
     detrimental reliance because the alleged act of making a payment that they are

1  already contractually obligated to make cannot constitute substantial reliance.  As
2  such, the Defendants contend that the Plaintiffs did nothing more than to promise
3  to make a payment they were obligated to make.

4          Contrary to this argument, Plaintiffs contend that they detrimentally relied
5  on Ocwen's promise to postpone the foreclosure sale and would not have
6  withdrawn from their pension plans prematurely in order to tender the $18,043.05
7  payment, further creating a greater financial hardship than which they were
8  already experiencing, had Ocwen not assured the sale would be postponed.
9  Moreover, Plaintiffs would not have procured the additional $4,962.00 the
10  following day if their home was going to be sold regardless.    Additionally,
11  Plaintiffs contend that the first time they were made aware of the outstanding
12  $4,962.00 claimed by Ocwen was on December 26, 2012 after the initial transfer
13  had been made.   Had Ocwen provided them the correct amount, said amount
14  would have been also withdrawn from their pension plans and included with the
15  wire transfer.

16          In several cases with similar facts as presented here, California courts have
17  upheld Plaintiffs' promissory estoppel claims.  For example, in *Garcia v. World*
18  *Savings Bank*, FSB, 183 Cal.App.4th 1031, 1041  (2010), the Court of Appeals
19  held that the "borrowers' actions in procuring a high cost, high interest loan by
20  using other property they owned as security in response to a lender's
21  representations that it would forestall foreclosure was sufficient to support
22  detrimental reliance; in *Wilson v. Bailey*, 8 Cal.2d 416, 424  (1937), where prior to
23  the expiration of option to re-convey property, "at a time when the plaintiff was
24  negotiating to exercise the option for the repurchase of property worth five or six
25  times the amount necessary to redeem," defendant assured her  that nothing would
26  be done in thirty days on the matter, the court held that "[t]he irremediable change
27  of position by the plaintiff in reliance upon the promise of the defendant justified
28  the trial court in refusing to listen to the defendant seeking to deny the truth of his
   own representations;" in *Sutherland v. Barclays/American Mortgage Corp.*, 53

Cal.App.4th 299, 305-306 (1997), the court found that a borrower detrimentally relied on lender's agent's statement that she could skip three mortgage payments so that she could make necessary earthquake repairs with money that would have otherwise been used to pay the mortgage, and lender could not insist that missed payments be demanded in a lump sum at the end of three months; in *Bank of Fairbanks v. Kaye*, 227 F.2d 566, 567-568 (9th Cir. 1995), the court found promissory estoppel where defaulting borrowers procured a new purchaser and the bank vice-president orally agreed to accept smaller monthly payments from the new purchaser, bank could not foreclose as long as agreed payments were being made.

Defendants contend that Plaintiffs failed to cure the loan because the foreclosure sale was scheduled at December 27, 2012 and the "additional fees" were tender on the day of the actual day of sale. In a similar set of facts, the lender in *Sutherland* returned borrower's mortgage payment because it did not include a lump sum for the three additional payments the lender contended were due, noting that "the law does not require a party to engage in futile or useless acts," the court concluded "[h]aving returned the [plaintiff's payment], informed her that such 'partial' payment would not be accepted, and declared her in default, [lender] could hardly maintain that the [borrower] should have been making regular payments after the three-month 'stop' period." 53 Cal.App.4th at 313.

Unlike, the borrower in *Sutherland*, the Plaintiffs in this case were not on notice that Ocwen would refuse any payment from them. The lender in *Sutherland* argued that the property had been sold on August 30 and, thus, borrower's tender after the sale date, of any sum, in attempt to cure the default and reinstate the loan would have been a "futile or useless act." *Id*. The court however, held that the lender in "[h]aving committed a material breach of its alleged promise by failing to postpone the foreclosure sale, [lender] cannot be heard to complain that [borrower's] attempted performance a week later was marginally inadequate." *Id*. (*See also Vineland Homes, Inc. v. Barish*, 138

Cal.App.2d 747, 759 (1956), holding "[p]erformance by the party not in fault is always excused by the wrongful refusal to perform by the other party.) The court concluded that "[t]he rights of the party in fault come to an end, but the contract is nevertheless kept in force so as to protect the rights of the innocent party and to enforce the obligations of the delinquent party." 53 Cal.App.4th at 313

Here, Plaintiffs tendered both the reinstatement fees and additional fees required by Ocwen to cure the default and reinstate the loan. Ocwen, however, lacked the ability to perform, having transferred the property to a third party through the foreclosure sale, despite its promise to postpone the sale.

Ocwen should have reasonably expected their promises to induce the Plaintiffs to act and the omissions of the Plaintiffs to not seek alternative methods to avoid foreclosure. As alleged herein, Plaintiffs detrimentally relied on the promises and were induced to act in accordance to the Agreement with Ocwen, and furthermore did not seek alternative methods to avoid foreclosure. Accordingly, Defendants demurrer to Plaintiffs' claim for promissory estoppel should be overruled in its entirety.

## C.
## PLAINTIFFS HAVE PROPERLY ALLEGED A CAUSE OF ACTION FOR FRAUD UNDER SECTION 1572

The Defendants contend that Plaintiffs have not established the elements required for fraud. Plaintiff's fraud claims are predicated on its promissory estoppel argument stemming from the false representations made by Ocwen that the foreclosure sale would not take place because the bulk of the default payment was made.

Although Defendants have called into question the truth of the facts alleged by Plaintiffs, to do so in a Motion to Dismiss is procedurally improper. Facts supporting fraud must be pleaded with particularity sufficient to show how, when, where, to whom, and by what means the representations were tendered. *See Lazar v. Superior Court*, 12 Cal.4th 631, 645 (1996). A motion to

dismiss for uncertainty should not be sustained if the ambiguous facts alleged are presumptively within the knowledge of the moving party. *Bacon v. Wahrhaftig*, 97 Cal. App.2d 599,605 *(1950)*.

Here, the specifics as to the who, how, when, where, and by what means are all matters that arose out of transactions that are within their knowledge or within the knowledge of other Defendants which are their purported agents to which they possess the knowledge of.

The Plaintiffs alleged in the SAC, on December 26, 2012, Ocwen representatives misrepresented that if Plaintiffs made certain payments, it would postpone the trustee sale.   The Plaintiffs further alleged that Ocwen was the loan servicer for Federal Home Loan.  The Plaintiffs further allege that they reasonably relied on these representations.  "'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.'"   *Id.*

As stated above, Plaintiffs received excerpts of the communication log between Ocwen Representatives and Mrs. Aguilar.  Thus, should the Court be inclined to dismiss Plaintiffs' claim for promissory estoppel, Plaintiffs respectfully request that the Court grant leave to amend its Fraud claim in light of the fact Ocwen's communication logs were received by Plaintiffs after the filing of the SAC.

### D.
### PLAINTIFFS HAVE PROPERLY ALLEGED A CAUSE OF ACTION FOR VIOLATION BUSINESS AND PROFESSIONS CODE SECTION 17200

California courts have repeatedly held that all that is required to establish a violation of Business and Professions Code Section 17200 is to show that the Defendants are business engaged in acts or practices that are unlawful, fraudulent or unfair.  The unlawful practices prohibited by statute are any practices forbidden by law, be it civil or criminal, federal, state or municipal, statutory, regulatory, or court made.  *Sauders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).

"Unfair," is used in the statute, simply means any practice whose harm to the victim outweighs its benefits.  "Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing that members of the public are likely to be deceived.  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992).

The "unfair" prong of section 17200 intentionally provides courts with broad discretion to prohibit new schemes to defraud.  *Motors, Inc. v. Times-Mirror Co*,.102 Cal. App. 3d 735, 740 (1980) .  An unlawful business practice or act is "unfair" when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984).  "[T]he court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104 (1996).

The facts are clear, Defendants actions as stated above are sufficient to constitute a cause of action for a violation of Business and Professions Section 17200 and, thus, Defendants' Motion to Dismiss as to this cause should be overruled in its entirety.

## E.
## PLAINTIFFS HAVE PROPERLY ALLEGED A
## CAUSE OF ACTION FOR QUIET TITLE

Quiet Title is based on depends on the success or failure of their substantive causes of action.  Accordingly, Defendants' demurrer to Plaintiffs' quiet title cause of action should be overruled in its entirety.

//

//

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.

## CONCLUSION

Plaintiffs' SAC is well-pled and allows the Court to infer more than the mere possibility of misconduct; in fact, when the Court accepts the factual allegations as true the Court can make a "reasonable inference" that Defendants are liable for the misconduct.  Although Defendants do allege "factual" disputes in their Motion to Dismiss, this is not sufficient to support this motion to dismiss.  Therefore, Plaintiffs respectfully request that the Court DENY Defendant's Motion to Dismiss in its entirety.  To the extent the Court dismisses any claim or allegation, Plaintiffs requests the opportunity to amend the SAC to cure any deficiency, add additional causes of action or rename any causes of action.


DATED:  January 20, 2014                    Respectfully Submitted,


                                            _____
                                            LAW OFFICES OF
                                            JOHN L. NORMAN
                                            Attorney for Plaintiffs
                                            Frank Aguilar and Helen Aguilar